Mary M. LO FRESE, Appellant,

v.

Harry HAYES and Charlotte Hayes,
Appellees.

No. 16031.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1957.

Rehearing Denied Feb. 8, 1957.

Cody Fowler and Margaret Deaton,
Tampa, Fla., Fowler, White, Gillen,
Yancey & Humkey, Tampa, Fla., of
counsel, for appellant.

Edward I. Cutler, Tampa, Fla., for appellees.

Before RIVES, TUTTLE and JONES,
Circuit Judges.

JONES, Circuit Judge.

In 1939 Pasco County, Florida, acquired by condemnation an easement for a right of way for a highway, later to be known as State Highway 45 and as U. S. Highway 41. The easement acquired was over lands in Pasco County and included a strip of land through the Northwest Quarter of the Southwest Quarter of Section 1, Township 24 South, Range 18 East. This tract, subject to the highway easement, was acquired in 1946 by the appellees, Harry Hayes and Charlotte Hayes, husband and wife. They sold off several portions of the original tract. On the unsold area of about ten acres lying west of the highway, which there ran in a Northerly-Southerly direction, the appellees constructed a service station, a restaurant and a motel. These were operated by the appellees under the name of Hayes Motel and Truck Stop, catering to the truckers. The appellees, desiring to sell the property, listed it with a real estate agent who placed an advertisement in a Tampa, Florida, newspaper.

In April, 1952, the appellant, Mary M. Lo Frese, a widow, went from New York to Florida with some money but no business experience, looking for an investment. She saw the newspaper advertisement offering the Motel property for sale and contacted the real estate agency. She was taken to the property, looked it

over and examined the books and records. Hayes showed the appellant the North, West and South boundaries of the tract. The East boundary along the highway was never pointed out to the appellant. Hayes told the appellant the neon sign was on the right of way; she saying he so told her after she signed a purchase agreement, again saying that she knew it when she bought the property, and finally saying she was not sure. Hayes admitted he knew that the right of way was 200 feet wide, extending 125 feet West and 75 feet East of a center line.

A price of $40,000 was agreed upon and a contract of sale was executed on April 19, 1952. The appellant procured counsel to represent her in the transaction. Her attorneys gave an opinion on the title as it was shown by abstracts. The opinion described the property under search as being "All of NW-¼ of SW-¼, Section 1, Township 24 South, Range 18 East, lying West of U. S. Highway #41, less" two parcels described by metes and bounds. The title opinion contained the usual proviso that it was subject, among other things, "to any matters which might be disclosed by an accurate survey of the property". The opinion called attention to the acquisition by Pasco County of the right of way and stated that "It would require a survey of the property to determine how this would affect the property under examination". The appellant testified that "right after I talked about taking over the place and I signed the contract I asked him [Hayes] about, 'I think I should have the place surveyed,'" and she quoted Hayes as replying "That won't be necessary; it will save you some money". In response to a question as to whether she relied upon Hayes' statement she first said "no" and then said "yes". The appellant said the real estate agent was present when she discussed the survey with Hayes but he could remember no such conversation. The appellant later testified that after she received the title opinion Hayes told her she didn't need a survey. This was nearly a month after the agreement was executed. She was unable to remember her testimony as to the statement being made on the earlier date. Hayes said he made no such statement. No survey was procured.

On May 20, 1952, the transaction was closed; the appellees delivered their deed conveying to the appellant the property by the same description as that in the title opinion. The appellant gave back a mortgage securing $25,000 of the purchase price. About 18 months later the appellant conveyed the property to her brother and she returned to her former home in New York. The brother made the payments of installments on the mortgage. More than two years after the conveyance by the appellees to the appellant it was discovered that the filling station, a part of the restaurant, and a part of one of the motel buildings had been erected on the highway right of way. The maximum encroachment did not, apparently, exceed twenty-five feet. After an unsuccessful effort to procure a deed from the State of Florida, the appellant's brother re-conveyed to her. The suit from whence arises this appeal was then filed. The appellant, as plaintiff, sought to rescind and cancel the contract of sale and the conveyance and for restitution of the moneys that had been paid. Her complaint was in two counts, by the first of which she charged that the appellees represented to the appellant that the improvements were within the boundaries of the property conveyed, and that such representations were false and fraudulent and known by the appellees to be so, that the representations were made for the purpose of inducing the appellant to enter into the agreement, that appellant, not knowing the truth with regard to the representations, was deceived thereby and was induced to enter into the agreement. The second count was based upon an alleged mutual mistake as to the location of the buildings with respect to the boundaries. The appellees denied making any representations, asserted that the appellant failed to exercise due diligence in not procur-

ing a survey as her counsel recommended, contended that the appellant, by delaying action for about six months after she had knowledge of the encroachment, had elected not to rescind; and finally, set up a defense that the appellant could not restore the status quo.

The Court denied the appellant's motion for summary judgment, reserved ruling on the appellees' counter-motion for summary judgment, and the cause went to trial before the Court without a jury. When the appellant had completed the presentation of her evidence, the Court, upon appellees' motion under Rule 41(b) Fed.R.Civ.Proc., dismissed the complaint, and entered judgment for the appellees on the ground that the appellant had shown no right to relief. Among the Court's findings is the following:

"Plaintiff did not show by any proof that the defendants knew of this encroachment at the time of the transaction between them, or that defendants committed any act of fraud. On the contrary, plaintiff had full opportunity of inspection and was informed by her attorneys, before consummating the transaction, of the advisability of having a survey made to determine how the State's right of way affected the property. In a stipulation of counsel dated October 5, 1955, and filed October 6, 1955, the parties agreed that there should be made available to the Court, without the requirement of formal filing which was waived, the depositions of the parties and certain exhibits identified therewith, including a copy of the opinion of title rendered by plaintiff's counsel in May of 1952, advising her that a survey would be necessary. Pursuant to this stipulation, the opinion of title was submitted to and considered by the Court, along with the plaintiff's admission on cross-examination that she had not seen fit to follow her attorneys' advice. Had a survey been obtained prior to consummation of the trans-

action, plaintiff would then have discovered the encroachment of which she is now complaining."

The Court made these conclusions of law:

"The Court has jurisdiction over the parties and the subject matter. Because of plaintiff's failure to exercise due diligence for her own protection in the transaction, she is precluded from relief in a Court of equity under the circumstances. After a transaction is executed by delivery of a deed and a purchase money mortgage and possession is taken thereunder, a purchaser who has not been evicted cannot, in the absence of fraud actuating the transaction, obtain the aid of a Court of equity to rescind the transaction or have the purchase money restored due to encroachment or overlaps, resulting from a mistake as to a border line."

■ The complaint set forth a claim founded upon fraud. Early in Florida jurisprudence it was held that "A false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that it shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance." Wheeler v. Baars, 33 Fla. 696, 15 So. 584. See Watson v. Jones, 41 Fla. 241, 25 So. 678; Allen v. United Zinc Co., 64 Fla. 171, 60 So. 182; Huffstetler v. Our Home Life Ins. Co., 67 Fla. 324, 65 So. 1; Fosgate v. Nocatee Fruit Co., D.C.S.D.Fla.1924, 3 F.2d 606; Ramey v. Koons, 5 Cir., 1956, 230 F.2d 802. Obviously the appellant has not established a case meeting this test of fraud. Before us the appellant urges two propositions, first, that it was not necessary to prove that a misrepresentation was intentionally made; and second, that it was not necessary that the plaintiff exercise due diligence to discover whether the representations were true.

The appellant says that she is not required to show that false representations

were knowingly made in order to obtain rescission. It is enough, she urges, if false representations were made, believed and relied upon, however innocently made. The doctrine invoked by the appellant is stated in Mr. Black's treatise in these words:

"An action at law for fraud in making false representations and a suit in equity for the rescission of a contract on the ground of misrepresentations are founded on distinct theories. The former is based on an intentional deceit, which of course includes a knowledge of the falsity of what is affirmed. But the latter is aimed at the undoing of a bargain which circumstances would render it inequitable to enforce and the restoration of the parties to the status quo, and this may be consistent even with entire innocence and ignorance on the part of the person making the misrepresentations, or with his belief in their truth. Where one induces another to enter into a contract with him by the positive assertion of a fact or state of facts, material to the transaction, which do not really exist, and the other relies thereon and is misled to his injury, the view of equity is that it would be unconscionable to permit the party making the assertion to retain the fruits of the bargain which he has thus secured, and therefore he must be held liable as for a species of constructive fraud, even though he may not have known that his statement was false. He is bound at his own peril to know the truth of the matter of which he speaks, and the inquiry is not whether he knew the representation to be false, but whether the other party believed it to be true and was misled by it in entering into the contract." Black, Rescission and Cancellation, 2nd Ed. 533, § 102.

In Robson Link & Co. v. Leedy Wheeler & Co., 154 Fla. 596, 18 So.2d 523, 530, decided by the Supreme Court of Florida in 1944, it was held that a misrepresentation as to the correctness of the financial condition of the issuer of corporate securities will entitle one who received such securities in an exchange to a rescission where reliance was placed upon such misrepresentation even though innocently made. The above quoted statement from Black was included by the court in its opinion. The basis for the decision was thus stated:

"As pointed out in what has already been said, the misrepresentation relied on by plaintiff as ground for rescission was a material one but was innocently made. * * * The result, however, in so far as the plaintiff was concerned, was the same as if there had been a deliberate intent to deceive and mislead plaintiff."

This case, the appellant contends, is controlling of our decision and requires a reversal of the district court's judgment.

The Florida Supreme Court has, in a number of opinions, announced the rule that:

"Misrepresentation does not afford a ground for cancellation or rescission of an instrument in equity unless the complainant relies thereon. And since every person must use reasonable diligence for his own protection it must appear that the complainant had a right to rely on the representation, and that he was not careless in so doing." 5 Fla.Jur. 223, Cancellation, Reformation, etc. § 25.

In Hancoy Holding Co. v. Lambright, 101 Fla. 128, 133 So. 631, rescission was sought on the ground that there was a shortage in the dimensions as represented by the vendor of the property sold. The purchaser did not have a survey made until after the transaction was closed. The seller did not point out any boundary lines. It was held that the purchaser failed to exercise ordinary care and rescission was denied. In Davis v. Dunn, Fla., 58 So.2d 539, the agent of the seller of dwelling property represented to the purchaser that the property was free from termites. The purchasers did not make or have an expert make

a termite inspection but relied upon the agent's representation. It was held that as the purchasers might have made an inspection or caused one to be made the Court would not decree rescission.

The general rule, to which Florida adheres, is stated in American Jurisprudence as follows:

"The authorities are well agreed that the principle of right of reliance is closely bound up with a duty on the part of a representee to use some measure of protection and precaution to safeguard his interest. It is well settled, as a broad generalization, that a person to whom false representations have been made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention, and his failure to do so was the result of his own negligence. Although the authorities are in accord on the abstract proposition that there is no right of reliance if the conduct of the representee constitutes negligence in the premises, under the circumstances of the case, the nature of the transaction and representations, and the situation of the parties, the authorities are not in perfect accord as to the standard by which the conduct of the representee is to be judged. According to some courts, the test is objective. It has frequently been stated that in order that false representations be a ground for an action of deceit, or for rescission of a contract entered into in reliance thereof, they must be such as are calculated to impose upon or deceive a person of ordinary prudence, and of such a character that a reasonable prudent person would rely on them. According to other courts, the standard for measuring the conduct of the representee is subjective, based not on what the ordinary man would do under the circumstances, but on what the particular representee should have done. Under this view, the test for deter-

mining whether one party to a transaction has a right to rely on representations of the other is not whether a reasonable man would be justified in relying on such representations, but whether they were of such a nature and made in such circumstances that the complaining party had a right to rely thereon. A rule which has been approved, and which combines those elements of both the objective and subjective tests which have been stated by the courts enunciating them to be desirable, is that in measuring the right to rely upon representations, every person must use reasonable diligence for his own protection. Under any standard of conduct, and in the absence of accompanying actual deception, artifice, or misconduct, it is well agreed that where the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities, he will not be heard to say that he was deceived by the other's misrepresentations." 23 Am.Jur. 960, Fraud and Deceit, § 155.

Where the agent of the lessor of a restaurant falsely stated to a prospective purchaser that former operators had made a profit, the foregoing from American Jurisprudence was quoted and relief was denied because of an absence of any showing that the purchaser was prevented from making an investigation, and absent such a showing there was no right to rely upon the representations. Potakar v. Hurtak, Fla., 82 So.2d 502. Other cases stating the principle that diligence and inquiry are conditions precedent to rescission are Hirschman v. Hodges, O'Hara & Russell Co., 59 Fla. 517, 51 So. 550; Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408; Byrd v. Smith, 114 Fla. 24, 152 So. 851; Johnson v. Green, Fla., 54 So.2d 44; and Brown v. Coward, Fla., 69 So.2d 174.

The doctrine of these cases was urged upon the Florida Court in Robson Link

& Co. v. Leedy Wheeler & Co., supra, and was held inapplicable for the reason, as the Court stated it, "These cases involved real estate transactions * * * and are not quite in point here." 18 So. 2d 523, 531. The cases distinguished in the Robson Link & Co. decision are in point in the case presented to us.

 We do not have in the case before us any express representations of the appellees to the appellant as to the location of the boundary of the property along the highway, nor any express representations that all of the structures were within the boundary line. That such representations would be implied seems doubtful. Whether so or not, and whether the appellees knew of the encroachment or not (it not being shown that they had such knowledge) we find that the appellant failed to use the required measure of precaution for the safeguarding of her interest, and that rescission was properly denied. The appellant had before her the opinion of able counsel of her own choosing. The opinion contained a statement of the necessity for a survey in order to determine how the existence of the right of way would affect the property she proposed to purchase. If the appellees did not know of the encroachment, and we agree with the district court that such knowledge was not shown, and if the appellee Hayes suggested to the appellant that she save money by not procuring a survey, and by this suggestion she was persuaded to ignore the warning of her own attorneys, the appellant failed in the exercise of that diligence and inquiry which must precede any relief by rescission.

The basis for our decision makes it unnecessary that we consider whether there was such a defect of title as would constitute an incumbrance justifying rescission. See Normandy Beach Properties Corp. v. Adams, 107 Fla. 583, 145 So. 870; Loeffler v. Roe, Fla., 69 So.2d 331, 47 A.L.R.2d 319. Neither do we decide whether there was such a delay after knowledge of the encroachment as to bar a rescission for misrepresentation, as was considered in George E. Sebring Co. v. Skinner, 100 Fla. 315, 129 So. 759; Scott v. Empire Land Co., D.C.S.D.Fla., 5 F.2d 873; Brite v. W. J. Howey Co., 5 Cir., 81 F.2d 840. The district court did not consider nor do we the question of restoration of the status quo as a condition to rescission. Mutual mistake is not urged as a basis for relief.

For the reasons stated, the judgment from which appeal was taken is

Affirmed.