PER CURIAM.
The appellant seeks review of an adverse judgment in the trial court awarding to the appellees, Edward Strawgate and Gerald Higier, money held in the registry of the court as well as costs and attorney’s fees.
This action commenced with the filing of a complaint for interpleader by the law firm of Meyer, Weiss, Rose & Arkin, acting as escrow agent in the land transaction involved in this case.
The appellant and the appellees are adverse claimants to the proceeds which were placed in escrow and subsequently placed in the registry of the court pursuant to the interpleader action. For the sake of clarity, the appellant is the seller of the property located on Windley Key. The appellees are the purchasers.
The appellees, Strawgate and Higier, are experienced real estate developers, specializing in the development of shopping centers.
In early 1972, the two men were exploring the possibility of developing a shopping center in the Florida Keys, and more particularly in the area of Islamorada and Windley Key.
Through an engineer whom they employed, the appellees came in contact with Wayne Sipe a realtor in the Keys who had the listing on the Turner property. And, through Sipe the appellees entered into negotiations with the Turners which resulted in a written option agreement dated June 6, 1972.
The terms of the option provided that it would extend for a period of 120 days and that the property would sell for a purchase price of $125,000, all cash at the time of closing.
The consideration for the option was the time, effort and expense expended by the appellees in an effort to promote interest in the prospective shopping center as well as the preparation of preliminary site plans.
Most important to the issues presented ill this appeal is the legal description which the parties used in the option agreement and subsequently in the purchase and sale agreement.
*904 This description read as follows:
“The real property which is described on Exhibit ‘A’, which is attached hereto and made a part hereof, which consists of 500 feet of frontage on U. S. Highway No. 1, and 700 feet in depth on Windley Key, in Monroe County, Florida. The frontage on U. S. No. 1 commences 100 feet south of the Southerly boundary line of the Ocean View Motel.” [Emphasis supplied.]
At trial, which was held before the court sitting without a jury, Higier testified that the legal description was written into the option and sales agreements by the appel-lees because neither the Turners nor Sipe had a survey of the property.
Higier also testified that some time during the option period or during an extension on the option which the appellees were given, a surveyor employed by the Turners, Robert Graham, contacted him with regard to conducting a survey of the land.
Higier indicated that he declined to authorize Graham to do a survey because at the time the appellees were letting the option expire without exercising it. He said this was some time in November, 1972.
The appellees in fact permitted the option to expire, however, their interest in the property was almost immediately rekindled as an investment with a view to developing the site as a shopping center in the near future.
In January, 1973, Strawgate flew down to Windley Key and met with Sipe to look at the property physically. The record is replete with testimony that up until this point the appellees had been under the impression that the property in question was adjacent to the pavement of U. S. Highway No. 1. By insertion of the word “frontage” in the contract, the appellees maintained they meant that the property abutted and was adjacent to the paved portion of the highway.
Strawgate’s viewing of the property, which was a crucial feature of the appel-lees’ case, did nothing to change this impression. He testified that when Sipe showed him the land, he fortified this impression.
For instance, Strawgate testified that Sipe said to him at one point, “It’s (the property in question) approximately 100, feet south of the motel along the highway. We’ll walk up.”
In addition, appellees maintained that there were physical features of the property which lead them to believe that the property abutted the paved portion of the highway (such as billboards, telephone wires and the location of the Ocean View Motel itself which was adjacent to the highway).
In fact, the actual frontage of the property did not lie adjacent to the pavement, but was set back approximately 175 feet and “fronted” the state right-of-way.
In his testimony, Sipe insisted that he had not been given the exact legal description and that he was unaware that the property was set back 175 feet. Sipe said he “assumed” the property was closer to the pavement than it was.
However, he staunchly denied representing to Strawgate that the property was adjacent to the highway, and he testified that the Turners had informed him the state right-of-way was located between the pavement and the Turner’s property line.
Sipe stated that he never represented to Strawgate where the right-of-way was because he didn’t know, and he also testified that he recommended a survey to the ap-pellees’ engineer.
In her brief, the appellant also has included a copy of a survey sketch which the appellees introduced at trial.
This sketch was provided to the appel-lees during the option period in 1972 by the Turners, and the appellees gave this *905 sketch to an architect whom they retained to prepare the site plans.
Appellant’s point on appeal is that the trial court erred in entering final judgment on behalf of the appellees on insufficient evidence because the appellees are experienced developers who were provided with a survey sketch which was sufficient for them to ascertain the width of the right-of-way, and also because the appellees had abundant opportunities for almost one year to determine the exact width of the right-of-way upon which the property fronted.
The record is clear that the parties entered into a sales agreement on February 1, 1973 for a purchase price of $140,000, with $25,000 as a down payment. Thereafter, the appellees for the first time undertook to have a survey taken of the property by Graham.
On February 5, five days after entering into the agreement, Graham informed the appellees that the property was set back 175 feet from the pavement.
On February 9, 1973, the appellees wrote a letter to William Turner, III, the appellant’s son, notifying him that they were cancelling the contract and seeking a return of the funds held in escrow.
At trial, the appellees introduced testimony to show that the setback substantially reduced the value of the land as an adequate site for a shopping center.
Further, they maintained that rescission of the contract was justified because the contract called for property which “fronted” on U. S. 1, and the property did not meet the requirements of the contract.
In addition, appellees contended that even if the property did front on U. S. 1, there was a mutual mistake of fact as to what were the precise boundaries of the property being conveyed, and/or the boundaries of the property were misrepresented by the Turners and Sipe.
In their brief, the appellees have argued each of these contentions under one point: that the trial court did not commit reversible error.
In our view, rescission of the contract by the appellees was not justified, and we think it was error for the trial court to award the funds held in escrow to the appellees.
If the word “frontage” as included in the contract is ambiguous,' we think the ambiguity should be construed strictly against the appellees, who chose to include the term in the legal description to the property without the benefit of a survey.
From the record, it appears the appellees had ample opportunity to have a survey prepared, but chose not to do so until after entering into a sales contract. We find nothing in the record which indicates that the word “frontage” did not envision any right-of-way adjacent to the pavement of the highway.
With respect to the appellees’ claims that rescission was justified due to mutual mistake and/or misrepresentation, it is well-settled that equity will not relieve a purchaser from the consequences of a mistake resulting from a want of care and diligence that would be exercised by a reasonably prudent person under the same circumstances. See, 33 Fla.Jur. Vendor and Purchaser, § 25; Hancoy Holding Co. v. Lambright, 1931, 101 Fla. 128, 133 So. 631; see also, Lo Frese v. Hayes, 240 F.2d 277 (5th Cir. 1957).
In the case at bar, it is apparent that the appellees were not novices in purchasing property for development of shopping centers. Prudence would seem to have alerted them to the necessity for having a survey of the property undertaken during the time they held an option on the property or at least before entering into a binding contract to purchase.
Indeed, the record indicates that on at least two occasions the seller, through his realtor, Sipe, and through his surveyor, Graham, suggested that a survey be made.
*906 Moreover, from the copy of the survey sketch which is coritained in the record and which was provided to the appellees at an early point in the option period by the Turners, we believe that the appellees should have been alerted to the existence of a right-of-way between the highway and the Turner property line, and they were careless in assuming that the property was adjacent to the pavement of U. S. No. 1.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is reversed and the cause is remanded to the trial court with instructions to enter judgment in favor of the appellant.
Reversed and remanded.