459 So.2d 487 (1984)
Gerald TINKER, Appellant,
v.
DE MARIA PORSCHE AUDI, INC. and Central National Bank of Miami, Appellee.
No. 82-201.
District Court of Appeal of Florida, Third District.
December 4, 1984.
Rehearing Denied January 22, 1985.
*488 Horton, Perse & Ginsberg, Edward Perse and William Cagney, III, Miami, for appellant.
*489 Shalle Stephen Fine, Ingraham & Sapurstein and Bertram Sapurstein, Miami, for appellee.
Before SCHWARTZ, C.J., and FERGUSON, J., and HELIO GOMEZ, Associate Judge.

ON MOTION FOR REHEARING
FERGUSON, Judge.
This appeal is brought from a judgment for the defendants in an action for rescission of a contract, fraud in the inducement, and breach of express and implied warranties.[1]
Plaintiff Gerald Tinker commenced this action against defendants De Maria Porsche-Audi, Inc. (hereafter De Maria) and Central National Bank of Miami (hereafter the Bank) seeking, inter alia, compensatory and punitive damages. The case proceeded to trial on allegations of fraud and misrepresentation in connection with the purchase of a used Jaguar sports car. The Bank counterclaimed for the unpaid balance due on an installment loan contract executed by plaintiff for purchase of the automobile. The court struck the claim for punitive damages. The jury returned a verdict on the fraud claim in favor of plaintiff and against De Maria only, assessing damages in the amount of $8,250. On the counterclaim, the jury awarded the Bank $4,500 representing the balance owed under terms of the contract. Plaintiff argued that the verdicts were inconsistent and moved that the matter be resubmitted to the jury for the purpose of resolving the inconsistency.[2] The request was denied. The trial court entered a judgment for De Maria notwithstanding the verdict, and by final judgment further awarded the Bank costs in the amount of $1,060 and attorney's fees in the amount of $15,000.
The evidence as developed at trial shows as follows. In 1976, plaintiff purchased for investment purposes a used 1972 Jaguar from De Maria. De Maria, through its sales agent and sales manager, verbally represented to plaintiff, prior to making the sale, that the automobile was in good operating condition, was powered by its original engine, and had never been involved in a major collision. Tinker claimed that he relied on these representations to his detriment and that De Maria intended for Tinker to act on these representations. Tinker had problems with the automobile immediately after its purchase. The car operated poorly and Tinker soon discovered that it was not powered by its original engine, had previously been involved in a major collision, and was determined to be a total loss by its previous owner's insurance company. Furthermore, the title held by the owner preceding De Maria stated that it was a "parts car." De Maria concedes that the automobile was rebuilt but contends that it had no knowledge of this fact at the time it purchased the car and that the car's title did not reflect that fact as required by statute. Tinker suggests that the fact that the party from whom De Maria purchased the automobile was not a titled owner was sufficient notice that, at best, the true history and condition of the vehicle could not be warranted by De Maria, which constituted willful negligence, or worse, that De Maria knew of and concealed the true history of the automobile, which constituted intentional misrepresentation.
In connection with the purchase of the automobile Tinker executed a retail installment contract and note with De Maria, the *490 seller, on a form contract which was provided by the Bank. The Bank provided financing for De Maria on a floor plan basis and the installment contract and note were assigned to the Bank pursuant to a preprinted assignment clause contained in the contract. Tinker stated by affidavit that he never dealt with the Bank in arranging the financing and had had no dealings with the Bank prior to delivery of the car. When De Maria failed to replace[3] or successfully repair the automobile after it became totally inoperable, Tinker ceased making payments to the Bank.
Based on an alleged close connection with De Maria in financing the sale, the Bank was named a party defendant on all counts. Its preprinted installment sales contract provided in bold letters on the first page:
NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
Plaintiff contends that (1) the trial court erred in striking the breach of warranty claims on grounds that the disclaimer was conspicuous and thus an effective bar to a fraud claim, (2) the court erred in granting De Maria's motion for judgment notwithstanding the verdict, (3) by terms of the contract all claims and defenses available against the seller were also available against the Bank which renders a judgment for the Bank on its counterclaim inconsistent with the judgment for plaintiff on the fraud claim against the seller, (4) it was error to strike the claim for punitive damages, and (5) it was error to refuse to grant plaintiff's request to instruct the jury on "negligent fraud".
De Maria contends that judgment in its favor notwithstanding the jury verdict was correct because fraud in the inducement cannot be asserted in the face of a conspicuous limitation of liability contained in the sales contract, relying on Faulk v. Weller K-F Cars, Inc., 70 So.2d 578 (Fla. 1954).
The Bank responds that the verdicts for it, both on plaintiff's claim and on its counterclaim, were supported by the evidence and law. Further, it contends that the verdicts against De Maria on the fraud claim but for the Bank on its counterclaim were not inconsistent.
We first dispose of the challenge to the court's instruction to the jury on negligent fraud. The instruction given adequately covered the subject.

I
The ruling of the trial court in reliance on Faulk v. Weller K-F Cars, Inc. is that a clause inserted into a sales contract which disclaims oral representations made with respect to the condition or fitness of the subject property constitutes a bar against an action for fraud or misrepresentation based on the oral statements, even where the oral representations were fraudulent and made for the purpose of inducing the sale. We disagree.
Faulk was an action in connection with the sale of a used automobile. The purchaser was given a warranty which provided that any defects found in the car within thirty days after purchase "would be remedied at a cost of only 50% of both parts and labor." Both the sales contract and warranty disclaimed any promises other than those contained within the written agreements. About a month later the purchaser returned the automobile for repairs which *491 cost $456.99. She refused to pay any portion of the repair bill and brought an action claiming that the dealer had fraudulently misrepresented the used car to her. The seller counterclaimed for one-half of the cost of the repairs. The trial court directed a verdict against plaintiff on a finding that the allegations and proof with reference to fraudulent misrepresentations were wholly insufficient, and the jury found for the seller on its counterclaim. The supreme court affirmed the trial court's finding that the allegations and proof of misrepresentation were insufficient, but then added, in language which was unnecessary to the holding,
The fact that there was a written guarantee and the rights of the parties were definitely defined negatives the idea of fraudulent misrepresentations and presupposes that something might be wrong with the condition of the used automobile which would require repairs which it might be necessary to remedy, with a portion of the costs thereof to be borne by each of the parties. 70 So.2d at 579.
The trial court, in entering the judgment for De Maria notwithstanding the verdict, relied on this quoted language. In the thirty years since Faulk was written it is significant, we think, that on such a recurring question the cited language has not been embraced by Florida appellate courts as a statement of the law. Appellant argues, as a possible explanation, that as a rule of law the statement in Faulk was superseded by the later enacted Uniform Commercial Code. A more plausible explanation, we think, is that the statement was dicta.
Section 671.103, Florida Statutes (1983) states that the pre-Code law with regard to fraud supplements the U.C.C. and is not displaced by the Code, unless a particular provision specifically provides for such displacement. See generally 3 R. Anderson, Uniform Commercial Code § 2-316:15 (3d ed. 1983). The law of fraud as it existed prior to Florida's adoption of the U.C.C. was correctly stated in Roper v. Florida Public Utilities Co., 131 Fla. 709, 179 So. 904 (1938), which held that although parol testimony cannot be introduced to vary the terms of a written instrument, such testimony is competent to prove that the instrument was procured through misrepresentation, overreaching, or undue advantage taken of the plaintiff. Roper was followed in a more recent case, Pena v. Tampa Federal Savings & Loan Association, 363 So.2d 815 (Fla. 2d DCA 1978), cert. denied, 373 So.2d 461 (Fla. 1979). See also Bleemer v. Keenan Motors, Inc., 367 So.2d 1036 (Fla. 3d DCA 1979) (the rule which prohibits the introduction of parol evidence to vary a written instrument has no application where the legal existence or binding force of the instrument is in question).
On the precise question presented here there is a plethora of authority from other jurisdictions, all holding that when fraud enters into a transaction to the extent of inducing a written contract, the parol evidence rule is not applicable. Clements Auto Co. v. Service Bureau Corp., 444 F.2d 169 (8th Cir.1971); O'Neil v. International Harvester Co., 40 Colo. App. 369, 575 P.2d 862 (1978); Bill Dreiling Motor Co. v. Shultz, 168 Colo. 59, 450 P.2d 70 (1969); Ed Fine Oldsmobile, Inc. v. Knisley, 319 A.2d 33 (Del. Super. Ct. 1974); City Dodge, Inc. v. Gardner, 232 Ga. 766, 208 S.E.2d 794 (1974); Ruler v. M. & M. Motor Co., 231 S.W.2d 277 (Mo. Ct. App. 1950); George Robberecht Seafood, Inc. v. Maitland Brothers Co., Inc., 220 Va. 109, 255 S.E.2d 682 (1979). Many of the cases are decided under the Uniform Commercial Code. City Dodge holds specifically that:
[T]he Uniform Commercial Code [cite omitted] does not preclude an action in tort based upon fraudulent misrepresentation inducing the sale where the plaintiff proves by a preponderance of the evidence the elements of fraud and deceit recognized under Georgia law, and that such a tort action cannot be controlled by the terms of the contract itself. 208 S.E.2d at 798.
We need not decide whether the court erred in finding the disclaimer of *492 warranty conspicuous in light of our holding that the existence of a written disclaimer, even if conspicuous, is ineffective to negate a seller's liability for fraud in the inducement. See, e.g., Clements Auto Co., 444 F.2d at 178-179; City Dodge, 208 S.E.2d at 797-798; Ed Fine Oldsmobile, 319 A.2d at 36. The exception to the parol evidence rule, which operates when a contract is procured by fraud, is also applicable where a general disclaimer clause is included in that contract. In fact, all of the cases cited in the preceding paragraph involved disclaimers which were apparently quite conspicuous.

II
Tinker does not challenge the verdict for the Bank on his fraud claim and concedes that the verdict reflects the jury's finding that the Bank was not so closely related with De Maria as to be responsible for its fraudulent acts. Nonetheless, he contends that the jury overlooked his fraud defense to the Bank's counterclaim. We agree.
Whether the jury's finding of fraud by De Maria is, as contended by Tinker, an absolute defense to the Bank's counterclaim for the balance owed on the contract, depends on the legal efficacy of the "Notice" provision which was included. Appellant expressed some uncertainty at trial as to how the provision operates.
The Notice is required by federal law in all consumer credit contracts made in connection with purchase money loans, such as installment sales contracts where the consumer executes the sales agreement together with a promissory note, both of which are, through a preprinted assignment clause, assigned to a bank which is closely affiliated with the seller. See 16 C.F.R. § 433.2 (1983). The effect of the federal rule is to defeat the holder in due course status of the assignee institutional lender, thus removing the lender's insulation from claims and defenses which could be asserted against the seller by the consumer.
Prior to the passage of the rule, consumers were caught in a "no-win" situation when the seller failed to remedy the defect either because of its unwillingness or its disappearance from the market. The institutional lenders then took advantage of protections under the holder in due course doctrine when the consumer sought to assert seller misconduct as a defense to the creditor's suit for payment on the note.[4] The rule is expressly designed to compel creditors to either absorb seller misconduct costs or seek reimbursement of those costs from sellers.[5]
Although we have found no cases directly on the point, it is clear that not only does the Notice clause entitle the buyer to withhold the balance of the purchase price owed to the creditor when the seller's contractual duties are not fulfilled, but it gives the buyer a complete defense should the creditor sue for payment.[6] The trial court correctly interpreted the law and accordingly gave a proper instruction:
[I]f you find that the bank has proven [its counterclaim by the] weight of the evidence, then you must consider the ... defenses offered by Mr. Tinker. If Mr. Tinker proves [fraud by the seller] then you must find in favor of Mr. Tinker and against the bank on its [counter] claim.
The jury was directed to find for the plaintiff on the Bank's counterclaim if it found that the plaintiff had proved misconduct on the part of the seller, and its failure to follow that instruction constituted error which should have been corrected by *493 the trial court on Tinker's timely motion alleging inconsistency of the verdicts. That error is correctable by this court without a remand. We hold that the fraud found to have been perpetrated by De Maria constituted a complete defense to the Bank's counterclaim for the balance owed on the installment sales contract,[7] which disposes of appellant's contention that the verdicts were inconsistent.

III
It was error for the trial court to strike the demand for punitive damages. Punitive damages are recoverable where the tortious act complained of is fraud. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936); Otey v. Florida Power & Light Co., 400 So.2d 1289 (Fla. 5th DCA 1981), rev. denied, 412 So.2d 465 (Fla. 1982); City of Hollywood v. Coley, 258 So.2d 828 (Fla. 4th DCA 1971). The court's jury instruction encompassed all the elements which would support a punitive damages award. It was therefore inconsistent to have stricken the claim for punitive damages. The jury's subsequent finding of fraud on the part of De Maria makes it especially appropriate for it to now consider an award of punitive damages. See City of Hollywood v. Coley, 258 So.2d at 832-833.
We reverse the judgment entered for De Maria notwithstanding the verdict and reinstate the jury award on Tinker's claim against De Maria, reverse the order striking the claim for punitive damages as against De Maria, affirm the judgment for the Bank on Tinker's fraud claim, and reverse the judgement for the Bank on its counterclaim. The award of costs and attorney's fees in favor of the Bank is also reversed.
Affirmed in part, reversed in part, and remanded for a new trial on punitive damages.
NOTES
[1] Prior to trial the court struck plaintiff's warranty claim on the ground that the contract contained a conspicuous and effective disclaimer. The court also struck the plaintiff's count for rescission as inconsistent with the claim for damages.
[2] The general verdict provided:

a. "Verdict: We, the Jury, find for the Plaintiff against DEMARIA PORSCHE-AUDI, INC., and assess his damages in the sum of $8,250."
b. "Verdict: We, the Jury, find for the Defendant, CENTRAL NATIONAL BANK, on its counterclaim and assess damages at $4,500."
c. "Verdict: We, the jury, find for the Defendant, CENTRAL NATIONAL BANK OF MIAMI."
[3] De Maria states that it offered to accept a trade-in of the Jaguar in return for Tinker's selection of another car. Tinker allegedly selected a Cadillac, and when the dealer computed the figures, Tinker concluded that he could not afford the Cadillac on a trade-in, and did not select another car that he could afford.
[4] 40 Fed.Reg. 53506 (1975) (the Statement and Basis of Purpose of 16 C.F.R. § 433.2 (1983)).
[5] Creditors can and have protected themselves against seller misconduct by such mechanisms as recourse and reserve arrangements. Their ability to protect against loss was stated as an important consideration in adoption of the rule. See 40 Fed.Reg. at 53523.
[6] See 40 Fed.Reg. at 53524; see also Comment, The FTC's Holder-In-Due-Course Rule: An Ineffective Means of Achieving Optimality in the Consumer Credit Market, 25 U.C.L.A.L.Rev. 821, 825-826 (1978); Comment, Preservation of Consumer Claims and Defenses: Miller's Tale Tolled by FTC (Or Is It?), 47 Miss.L.J. 768, 775 (1976).
[7] Under 16 C.F.R. § 433.2, Tinker could have sued the Bank for restitution to recover payments already made, in addition to defending against the Bank's counterclaim for payment. 40 Fed.Reg. at 53524.