656 So.2d 952 (1995)
Irvin DAVID and Prestige Motorcar Imports, Inc., Appellants,
v.
Gary DAVENPORT, Appellee.
No. 94-2297.
District Court of Appeal of Florida, Third District.
June 21, 1995.
*953 Greenfield & Duval and Harvie S. Duval, for appellants.
Herman Roof Henry & Gordon and Lawrence S. Gordon, for appellee.
Before SCHWARTZ, C.J., and JORGENSON, and LEVY, JJ.
PER CURIAM.
Prestige Motorcar Imports, Inc. and its president and owner, Irvin David, appeal from a final judgment. For the following reasons, we reverse.
In September 1989, Davenport purchased a used 1984 Aston Martin Lagonda from Prestige for $57,600.00. The purchase orders indicate that the car was sold "As Is"; a separate written 30-day limited warranty covered certain enumerated items. Davenport had a friend fly down from New York to inspect the car. Following that inspection, the seller agreed to repair certain items, and Davenport agreed to the terms of the sale. Davenport took possession of the car on a Friday afternoon even though the car was still manifesting various problems. The seller told Davenport to keep the car over the weekend and return it to the dealership on the following Monday, assuring Davenport that any remaining problems would be fixed.
Davenport drove the car to West Palm Beach that weekend for inspection by the Aston Martin Agency. That repair shop informed Davenport that the catalytic converter had been tampered with, and that the car required $13,000.00 worth of repairs. Davenport spoke by telephone with the seller the following Monday, and complained about the car's condition. Irvin David, owner and president of Prestige, instructed Davenport to return the car to Miami and offered to return the purchase price or fix the car to the buyer's satisfaction. Davenport refused the offer, had the car repaired in Palm Beach County, and then sued the seller for fraud and breach of warranty. Following a bench trial, the court entered judgment for Davenport for $10,641.86, not specifying the basis for recovery.
In doing so, the trial court erred, as there is no evidence in the record that the seller made any fraudulent misrepresentations to the buyer to induce him to buy the car. In the absence of fraud, the written warranties establish the parameters of the seller's responsibilities. See Tinker v. De Maria Porsche Audi, Inc., 459 So.2d 487 (Fla. 3d DCA 1984), rev. denied, 471 So.2d 43 (Fla. 1985). The extremely limited written warranty did not encompass the repairs made to the car, and the seller is not responsible for their cost.
Furthermore, "[w]hen the buyer before entering into the contract has examined the goods ... as fully as he desired ... there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." § 672.316(3)(b), Fla. Stat. (1993). In this case, the buyer had the car inspected and had ample opportunity to discover the defect. Even if the sales representations regarding the car's condition were not mere "puffing,"[1] "a misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence." Wasser v. Sasoni, 652 So.2d 411, 412 (Fla. 3d DCA 1995). All of the seller's actions in this case, both before and after Davenport took possession of the car, belie Davenport's claim of fraud.[2]
*954 We reverse, and direct the trial court on remand to enter judgment for defendants.
NOTES
[1] "[C]ertain affirmations of the seller amount only to `puffing' and do not give rise to warranties... ." Carter Hawley Hale Stores, Inc. v. Conley, 372 So.2d 965, 969 (Fla. 3d DCA 1979); see also § 672.313(2), Fla. Stat. (1993) ("a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty").
[2] In Tinker v. De Maria Porsche Audi, Inc., the seller "failed to replace or successfully repair the automobile after it became totally inoperable," and simply offered to accept the car as a trade-in in return for the buyer's selection of another car. 459 So.2d at 490 & n. 3. Here, the record is undisputed that the seller offered to repair the car to the buyer's satisfaction or refund the entire purchase price.