678 So.2d 834 (1996)
STEV-MAR, INC., a Florida Corporation, Appellant,
v.
Donna K. MATVEJS, Carico Real Estate Company, a Florida Corporation, and Carey Singer, Appellees.
No. 95-310.
District Court of Appeal of Florida, Third District.
July 3, 1996.
*835 Alan C. Gold, South Miami, for appellant.
Miller & Woods and Steven R. Woods, West Palm Beach; Erol M. Vural, Summerland Key, for appellees.
Before SCHWARTZ, C.J., and BARKDULL[*] and COPE, JJ.
COPE, Judge.
Stev-Mar, Inc. appeals an adverse summary final judgment. We reverse.
Donna Matvejs owned a home on a large lot on Grassy Key in Monroe County, Florida. She divided her property in two and, without replatting or any governmental approval, listed the vacant half of her property for sale as a homesite. Carico Real Estate Company and Carey Singer acted as the seller's real estate agents. They placed an advertisement in the local newspaper as follows:
GRASSY KEYMagnificent home site on Morton Street. Two deep lots totalling nearly an acre with 120' directly on the Gulf. Lots are cleared with a seawall. 175,000 neg. with 80% owner financing. Call Carey Singer.
After seeing the advertisement, Stev-Mar, Inc. ["Buyer"] contacted Singer and arranged to see the property. The principals of Stev-Mar, Steven Murphy and Marlene Logan, advised Singer that they wanted to buy a site for a retirement home. Singer told Stev-Mar that the property was buildable as a homesite and was properly zoned and platted for a single family home. At her deposition in this case, Singer admitted that she knew that the property needed to be replatted and subdivided.
Buyer entered into a contract to buy the property from seller Matvejs. The contract stated, in part, that Buyer would take title "subject to zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common *836 to the subdivision...."[1] The contract went on to specify that none of such restrictions "prevents use of Real Property for residential purposes."
Buyer hired an attorney to represent it at closing. Buyer told the attorney that the intended use of the lot was as a homesite, and that it wanted the attorney, among other things, to verify that the lot could be used for that purpose. The attorney verified that the zoning for the area would permit the building of a single family residence. The transaction closed and the seller delivered to Buyer a general warranty deed. The deed did not include a disclosure statement required for real property located in unincorporated Monroe County. The disclosure statement advises a buyer, in part, that "under the Monroe County Land Development Regulations the division of land into parcels of land [which] are not approved as platted lots under the regulations confers no right to develop a parcel of land for any purpose."[2]
Thereafter Buyer learned that the property had not been properly subdivided or replatted and cannot legally be used as a homesite. Further, for present purposes Buyer's testimony is taken as true that it is highly unlikely that approval for replatting can be obtained.
Buyer brought suit against the owner, real estate agency, and real estate agent for intentional fraud and, alternatively, for negligent misrepresentation. Buyer made an alternative claim that the contract should be rescinded on the basis of mutual mistake.[3]
Defendants moved for summary judgment on the fraud, misrepresentation and rescission claims. For purposes of the motion, defendants conceded that there had been affirmative misrepresentations, as well as omissions. They argued, however, that in order to prevail, Buyer must have relied on the misrepresentations and omissions. In this case, Buyer hired its own counsel and requested that counsel verify that the lot could be used as a homesite. Counsel investigated, concluded that it could be used as a homesite, and represented Buyer at closing. Defendants argued that, as a matter of law, this meant that Buyer was relying on its own attorney and was not relying on any of the defendants' misrepresentations or omissions. The trial court agreed with defendants, ruling that "subsequent to the Defendants['] alleged misrepresentations the Plaintiff retained an attorney to investigate the very matters complained of, i.e., buildability of the subject lot. Accordingly, the Court finds as a matter of law the Plaintiff did not rely upon the representations of the Defendant[s]. Sherban v. Richardson, 445 So.2d 1147 (Fla. 4th DCA 1984)." The court entered partial summary judgment in favor of defendants on the fraud, misrepresentation and rescission claims. After disposition of the remaining claims in the lawsuit,[4] Buyer appealed.
*837 In our view, the decision in Besett v. Basnett, 389 So.2d 995 (Fla.1980), compels reversal. There the buyer relied on the representations of the seller regarding the size of the property, the condition of the roof, and the income derived from real property. After purchase, the buyers learned that the representations were untrue. Upholding the buyers' right to bring suit, the Florida Supreme Court said, "A person guilty of fraudulent misrepresentation should not be permitted to hide behind the doctrine of caveat emptor." Id. at 997. The Court adopted Sections 540 and 541 of the Restatement (Second) of Torts (1976) as follows:
§ 540. Duty to Investigate.
The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.
. . . .
§ 541. Representation Known to Be or Obviously False.
The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.
. . . .
A person guilty of fraud should not be permitted to use the law as his shield. Nor should the law encourage negligence. However, when the choice is between the twofraud and negligencenegligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter. As the Michigan Supreme Court said many years ago:
There may be good, prudential reasons why, when I am selling you a piece of land, or a mortgage, you should not rely upon my statement of the facts of the title, but if I have made that statement for the fraudulent purpose of inducing you to purchase, and you have in good faith made the purchase in reliance upon its truth, instead of making the examination for yourself, it does not lie with me to say to you, "It is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence, of want of ordinary care, in believing that I told the truth; and because you trusted to my word, when you ought to have suspected me of falsehood, I am entitled to the fruits of my falsehood and cunning, and you are without a remedy."
Bristol v. Braidwood, 28 Mich. 191, 196 (1873).
We hold that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him.
Id. at 997-98.
Under the principles outlined in Besett, the judgment must be reversed. There is no question in this case but that this property was specifically represented as being a "magnificent homesite," for which the seller charged $175,000.00. Reading the record in the light most favorable to Buyer, as the nonmoving party on summary judgment, the real estate agent represented that the lot was properly platted for residential purposes, when that was not true. On those representations, Buyer entered into the contract for purchase and sale.
Although Buyer hired an attorney for purposes of the real estate closing and requested that the attorney verify that the lot could be used as a homesite, Buyer's attorney merely checked the zoning on the property and found that it had the proper zoning. Based on the present record, however, it appears that Buyer's attorney did not investigate further and did not discover that the property had not been replatted. For present purposes, it must be deemed that Buyer's attorney made a negligent investigation.
Under the views expressed in Besett, the seller and real estate agent cannot extricate themselves from their intentional fraud on the theory that if only Buyer's attorney had done more work, Buyer's attorney would have discovered the fraud. As stated in Besett, "negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to *838 suffer loss at the hands of a misrepresenter." 389 So.2d at 998. Section 541 of the Restatement recognizes an exception where the recipient of a fraudulent misrepresentation knows that the representation is false "or its falsity is obvious to him." Id. at 997. There is no evidence whatsoever that Buyer knew the true state of affairs, nor is this a situation in which the falsity was obvious.
We reach the same result upon consideration of Sections 546 and 547 of the Restatement (Second) of Torts. Those sections provide:
§ 546. Causation in Fact
The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his reliance is a substantial factor in determining the course of conduct that results in his loss.

Comment:
. . . .
b. For a misrepresentation to be a cause in fact of the pecuniary loss that results from the plaintiff's action or inaction, the plaintiff must have relied upon the misrepresentation in incurring the loss. It is not, however, necessary that his reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. It is not even necessary that he would not have acted or refrained from acting as he did unless he had relied on the misrepresentation. (Compare § 432). It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision. Thus it is immaterial that he is influenced by other considerations, such as similar misrepresentations from third persons, if he is also substantially influenced by the misrepresentation in question.
Illustrations:
. . . .
2. A makes fraudulent misrepresentation to B in order to induce B to buy land. Although he believes A's statements, B wishes to confirm them and therefore makes an inspection of the land and inquiries of third persons. He then buys the land from A. In doing so, he relies in substantial part upon A's representation, as well as on the results of his investigation and inquiries. A is subject to liability to B for the pecuniary loss that B suffers through the purchase of the land.
. . . .
§ 547. Recipient Relying on His Own Investigation
(1) Except as stated in Subsection (2), the maker of a fraudulent misrepresentation is not liable to another whose decision to engage in the transaction that the representation was intended to induce is not caused by his belief in the truth of the representation but is the result of an independent investigation made by him.
(2) The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statements or otherwise intentionally prevents the investigation from being effective.
Comment on Subsection (1):
a. It is not enough to relieve the maker of a fraudulent misrepresentation from liability that the person to whom it is made makes an investigation of its truth. It is only when he relies upon his investigation and does not rely upon the false statement that he cannot recover. Whether he does rely upon the one or the other or in substantial part upon both (see § 546), is a question of fact and is for the jury to determine, unless the evidence clearly indicates only one conclusion.

Comment on Subsection (2):
b. Even though the recipient is found to act or to refrain from action in reliance only upon his own investigation, the maker of the fraudulent misrepresentation may still be liable if he intentionally frustrates the investigation. When he makes it ineffective by false statements, by misdirection, concealment or other trickery, his original misrepresentation carries through, and he cannot be heard to say that the recipient has relied upon an inquiry that has come to nothing through his own machinations. *839 It is by reason of his conduct that the recipient has been induced to surrender his judgment in reliance upon a frustrated investigation originally set in motion by reason of the misrepresentation.
(Emphasis added).
In the present case both officers of Steve-Mar repeatedly and unequivocally testified that they relied on all of the information they had been given about the lot in making their decision to purchase. They testified that they knew defendant Singer to be an experienced and knowledgeable real estate agent who lived on the same street where the property was located. They testified that they relied on her statements and her expertise, as well as the fact that the property was specifically advertised and represented as being a magnificent homesite. They testified that they also relied on their own attorney. For purposes of the summary judgment proceeding, Buyer's officers' testimony must be taken as true and sufficiently demonstrates that the defendants' fraudulent misrepresentations and omissions were a substantial factor in determining Buyer's course of conduct that resulted in the loss. See id. § 546.
There is an additional, independent basis for reversal as to the owner. Subsection 547(2) of the Restatement, provides that the "fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statements or otherwise intentionally prevents the investigation from being effective." In this case the deed delivered by the seller to Buyer did not contain the disclosure statement required by Monroe County which is designed to warn buyers that land which has not been properly approved as platted lots confers no development rights. If that omission was intentionally done, it would fall within the ambit of subsection 547(2).
The trial court relied on Sherban v. Richardson, 445 So.2d at 1148, but that decision has no application here. In that case, Sherban represented to Richardson that he owned all of the outstanding stock of Safari Productions, Inc. He entered into a contract to sell the stock to Richardson. In reality Sherban held equitable title to the stock under an arrangement in the nature of a security agreement. After the closing of the sale, the business failed. Richardson brought suit for damages, claiming that Sherban had fraudulently misrepresented the nature of his ownership interest.
The Fourth District denied relief to Richardson, on two theories. First, "none of the damages claimed by Richardson can be said to have been proximately caused by the nature of the stock's ownership, whether title was defective or not." Id. Second, "all of the documents defining the precise status of title were reviewed by Richardson's attorney (1) before he drew the purchase and sale agreement which was ultimately executed by the parties and (2) again by Richardson and her attorney at the time of closing." Id.
Insofar as pertinent here, the Sherban court held that there was no reliance by Richardson, because all of the title documents had been presented to her attorney and were reviewed by the attorney prior to entering into the contract and prior to closing. In that case, the state of the title was fully and accurately reflected on the face of the documents, and all of the documents were given by the seller to the buyer. The case thus fell within Section 541 of the Restatement, namely, "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Besett v. Basnett, 389 So.2d at 997. Having been given all of the title documents, the exact state of title was obvious.
In the present case, by contrast, the seller and real estate agent both made affirmative representations that the property was suitable as a homesite. Neither the seller nor the agent ever presented documentation to Buyer from which it would have been obvious that this property could not be used as a homesite. The instant case is controlled by Besett v. Basnett, rather than Sherban v. Richardson.
The summary judgment is reversed and the cause remanded for further proceedings consistent herewith.
BARKDULL, J., concurs.
*840 SCHWARTZ, Chief Judge (dissenting).
The court to the contrary notwithstanding, it is a well-nigh universal rule that when, as here, the purchaser of realty undertakes, through his attorney or otherwise, to determine the state of the title or the condition of the property and fails to do so appropriately, the seller and his agents are insulated from liability for alleged misrepresentations concerning those issues. As is said in the leading case of Shappirio v. Goldberg, 192 U.S. 232, 241-42, 24 S.Ct. 259, 261, 48 L.Ed. 419, 424-25 (1904), in effect distinguishing the authorities relied upon by the majority:
There are cases where misrepresentations are made which deceive the purchaser, in which it is no defense to say that had the plaintiff declined to believe the representations, and investigated for himself, he would not have been deceived. But such cases are to be distinguished from the one under consideration. When the means of knowledge are open and at hand, or furnished to the purchaser or his agent, and no effort is made to prevent the party from using them, and especially where the purchaser undertakes examination for himself, he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor.
Shappirio, 192 U.S. at 241-42, 24 S.Ct. at 261, 48 L.Ed. at 424-25 (citations omitted); accord Imperial Assurance Co. v. Joseph Supornick & Son, Inc., 184 F.2d 930 (8th Cir.1950)[5]; Dillon-Malik, Inc. v. Wactor, 151 Ariz. 452, 454, 728 P.2d 671, 673 (Ct.App. 1986)[6]; Fireison v. Pearson, 520 A.2d 1046, 1051-52 (D.C.App.1987)[7]; Hancoy Holding Co. v. Lambright, 101 Fla. 128, 135-36, 133 So. 631, 634 (1931)[8]; Ryan v. Brady, 34 Md.App. 41, 55, 366 A.2d 745, 753 (1976)[9]; see Lo Frese v. Hayes, 240 F.2d 277, 282 (5th *841 Cir.1957)[10]; French v. Isham, 801 F.Supp. 913, 923 (D.R.I.1992)[11]; cf. Cook v. Jackson Nat'l Life Ins. Co., 844 F.Supp. 1410, 1412-13 (D.Colo.1994)[12]; David v. Davenport, 656 So.2d 952, 953 (Fla. 3d DCA 1995).[13]
There is little question that these cases, well founded as they are upon the separate, but intertwined principles that (a) the purchaser's use of his own attorney precludes a finding of reliance upon the defendant which is indispensable to an actionable misrepresentation under Florida law, see 27 Fla. Jur.2d Fraud & Deceit § 49 (1981); Avila S. Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla.1977), and (b) the negligent failure of the attorney to discover readily available evidence of the inaccuracy of the defendant's statements constitutes an independent, intervening cause of the damage, see Slavin v. Kay, 108 So.2d 462 (Fla.1958); Rawls v. Ziegler, 107 So.2d 601 (Fla.1958); Cortes v. Delta Air Lines, Inc., 638 So.2d 108 (Fla. 3d DCA 1994), and cases cited, are both correctly decided and directly applicable here. I would affirm.
NOTES
[*] Judge Barkdull did not hear oral argument, but participated in the decision.
[1] The contract is on the Florida Association of Realtors and Florida Bar standard form.
[2] The full text of the disclosure statement required by the Monroe County Code is:

The parcel of land described in this instrument is located in unincorporated Monroe County. The use of the parcel of land is subject to and restricted by the goals, policies and objectives of the Monroe County Plan and Land Development Regulations adopted as a part of, and in conjunction with and as a means of implementing the Monroe County Comprehensive Plan. The Land Development Regulations provide that no building permits shall be issued for any development of any kind unless the proposed development complies with each and every requirement of the regulations, including minimum area requirements for residential development. You are hereby notified that under the Monroe County Land Development Regulations the division of land into parcels of land [which] are not approved as platted lots under the regulations confers no right to develop a parcel of land for any purpose.
§ 9.5-81(f), Monroe County Code. The validity of this provision has not been raised as an issue in this matter, and we do not by this opinion indicate any approval or disapproval of such a requirement.
[3] Plaintiff asserted several other claims which are not material to this appeal. After summary judgment was entered in favor of defendants on the fraud, misrepresentation, and rescission claims, the parties stipulated to the dismissal of the remaining counts which had not been disposed of by summary judgment, in order to provide an appealable order. The parties have an agreement providing in essence for reinstatement of the dismissed claims in the event of a reversal of the summary judgment by this court.
[4] See supra note 3.
[5] While it was alleged that defendants relied on the alleged misrepresentations made by plaintiff and the insured, it appears that they were represented by their own adjusters who made investigation as to the facts. It is a fundamental principle of law of universal application that in order to entitle one to relief because of false representations, the person claiming to have been deceived must have relied upon the representations and must have been induced thereby to act to his injury. It is equally well settled that if the complaining party resorts to sources of information other than the representations made in order to ascertain the facts, he is scarcely in position to claim that he has relied upon the representations so made.

Imperial, 184 F.2d at 934-35.
[6] [The plaintiff] cannot secure redress for fraud where [he] acted in reliance on [his] own judgment based upon independent investigation.... at the city's zoning department at the suggestion of [the defendant] and he did not rely on her representations.

Dillon-Malik, 151 Ariz. at 454, 728 P.2d at 673.
[7] [E]ven if, arguendo, we assume a fraudulent misrepresentation on the part of the vendor, the undertaking by the Fireisons through their attorney to examine the title and describe the property in the deed defeats their claim that they were deceived to their injury.

Fireison, 520 A.2d at 1051-52.
[8] "If after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, * * * and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. * * * The same result must plainly follow when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports, or professes to commence an investigation."

Coyle testified that the trade was under way from September to November, 1925; that he did not have the property surveyed until February following; that he had seen the property two or three times before consummating the purchase; and that he accepted a deed and a title insurance policy in both of which the property is described without specific dimensionswhich would strongly favor the defendant's contention that Coyle bought mainly on his own knowledge and information. See 18 C.J. 285; 9 C.J. 226, 227. It could hardly be maintained that this purchase should be rescinded because of any surprise, mistake, misrepresentation, want of freedom, undue influence, falsehood, or suppression of the truth. See Hirschman v. Hodges, O'Hara & Russell Co., supra [59 Fla. 517, 51 So. 550]; Citizens' State Bank v. Jones [100 Fla. 1492] 131 So. 369.
Hancoy, 101 Fla. at 135-36, 133 So. at 634.
[9] [A]lthough a purchaser of land has a right to rely upon a representation made to him by the seller or his agents, as to the boundaries, without being required to conduct an independent investigation of the land records, once the purchaser assumes the burden of an examination he cannot say that he was deceived to his injury where such examination discloses the correct information.

Ryan, 34 Md.App. at 55, 366 A.2d at 753.
[10] Whether so or not, and whether the appellees knew of the encroachment or not (it not being shown that they had such knowledge) we find that the appellant failed to use the required measure of precaution for the safeguarding of her interest, and that rescission was properly denied. The appellant had before her the opinion of able counsel of her own choosing. The opinion contained a statement of the necessity for a survey in order to determine how the existence of the right of way would affect the property she proposed to purchase.

Lo Frese, 240 F.2d at 282.
[11] French's own agent told him the property was sound and did not mention any frustration of inspection by defendants. This testimony belies plaintiff's allegations of fraud. Defendants do not bear responsibility for Pretzer's alleged failure to notify French that the steel beam's source of support had not been identified. It was Pretzer's responsibility to tell French whether the inspection was satisfactorily completed, not Isham's or Corbin's.

French, 801 F.Supp. at 923.
[12] What [the independent realtor and Nelson's friends] did or did not tell him is of little consequence here. It is the fact that he consulted with them and made a personal examination that removes the credence that otherwise might be given to his allegations of reliance on defendant's representations. (citation omitted)

"If it is established that the representee relied on his own judgment and not on the representor's statements, he cannot recover, even though he was genuinely deceived by the representations and his investigation was of an incomplete or ineffectual nature." 37 C.J.S. Fraud § 37 (1943).
Cook, 844 F.Supp. at 1412-13.
[13] In this case, the buyer had the car inspected and had ample opportunity to discover the defect .... "a misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence."

David, 656 So.2d at 953.