JOHN E. PATTON v. CHAMPION FIBRE COMPANY AND W. J. DAMTOFT.

(Filed 21 December, 1927.)

**Deeds and Conveyances—Timber—Fraud—Misrepresentation — Damages —Independent Investigation.**

Where the purchaser of lands acts upon his own investigation as to the quantity of timber standing thereon, which is a paramount inducement to him to buy, and in consequence thereof he has bought at a less price than they were offered to him, and he has received a deed without warranty as to the quantity of timber, he may not recover from his vendor damages upon the latter's alleged fraudulent representation as to a greater quantity of timber than that actually conveyed, as the purchase was made independent of the alleged fraudulent representations and not in consequence thereof.

APPEAL by plaintiff from *Shaw, J.,* at May Term, 1927, of BUNCOMBE. Affirmed.

Action to recover damages sustained by plaintiff by reason of fraudulent representations made to him by defendants, with respect to the quantity of timber on lands sold and conveyed to plaintiff by defendant, Champion Fibre Company, said fraudulent representations having been made by its codefendant, W. J. Damtoft, its agent and woods superintendent, who acted for said company in making said sale.

From judgment dismissing the action, upon defendants' motion for judgment as of nonsuit, at the close of plaintiff's evidence, plaintiff appealed to the Supreme Court.

*Marcus Erwin and Mark W. Brown for plaintiff.*
*Rollins & Smathers for defendants.*

CONNOR, J. Early in December, 1921, negotiations were entered into by and between plaintiff and defendants for the sale to plaintiff by defendants of certain lands situate in Cherokee County, N. C., and owned at the time by defendant, Champion Fibre Company. These negotiations were conducted on behalf of said company by defendant, W. J. Damtoft, its agent and woods superintendent, and were begun and concluded at Asheville, N. C. Plaintiff testified as follows: "I asked him what sort of timber it was. He said he had a statement of the timber on four tracts. He then went to his grip and got out a statement, showing the amount of the land." This statement, offered in evidence by plaintiff, is entitled "Approximate Estimate of Portions of the Dewar Lands." It appears therefrom that there were 5,116,000 board feet of timber, and 6,020 cords of chestnut wood on the McClelland's Creek tract. This statement shows the estimate in feet of the different

kinds of timber on said tract. Plaintiff further testified: "He got out this statement and we went over it together, and talked about it. He asked what experience I had had in the lumber business and I told him, about 25 years. He then asked what sort of outfit I had to work with. I told him I had a mill which would cut 10,000 to 15,000 feet a day, and that I had plenty of stock to do the logging and hauling. He said, 'You ought to have the McClelland Creek Boundary.' I told him, 'Yes,' that I would like to get a boundary where I would not have to move so much. We talked about it and went over the figures together. I asked him if he had measured it, and he said 'Yes,' that he had made a tree count and used the Doyle Rule. I asked him if any one else had cruised it. He said 'Yes,' naming several men, including Mr. C. D. Rankin. I asked him how much Mr. Rankin had made it, and he said 6,185,000. I had known Mr. Rankin. His reputation as an estimator was good. I had worked under him for years and his estimates always held up. That made me pretty well satisfied, and willing to look at it. I then asked Mr. Damtoft the price of the timber. He said that he would not sell the timber by itself, but wanted to sell the timber, land and all. I then asked him the price of the timber, land and all, and he said, '$30 per acre.' I decided that as I was out of timber and did not have any work on at the time, I would go and see it. He said he would have a man to meet me and show me the boundary."

Thereafter plaintiff, with his son, who was interested with him in business, went from Asheville to Cherokee County, and accompanied by an employee of the company, who showed him the boundaries of the land, went upon the land, and examined the timber. Plaintiff also made inquiries of lumber men of experience, who knew the land as to the timber. Thereafter, on 21 December, 1921, plaintiff wrote and mailed to defendant, Champion Fibre Company, a letter in which he said:

"I have just got back from looking over your boundary of timber on McClure's Creek. I went over the proposition very carefully, and find that I cannot handle it at the price for this reason. The logging proposition is very rough, also find that one cove of the boundary has the chestnut oak cut, and it has been badly cared for in falling. Most all the good and large trees have split as much as forty feet, which practically ruins them. Also I find fifty acres that has the timber all taken off. I am satisfied that the estimate on the chestnut will fall considerably under. And taking the whole thing in consideration, I feel that $25 an acre would be a good price.

"I have talked with several experienced lumber men who have been on the tract, and have cruised it closely, and some of them think that $20 would be a fair price for the boundary, while not any of them that I have talked with puts the value on it over $25 an acre.

"Please call me over the phone if you decide to take my proposition. Please let me hear from you at once, as I have some other boundaries in view."

Plaintiff thus declined defendants' offer to sell him the land and timber at $30 per acre, for the reasons stated in his letter. His counter proposition, in which no reference is made to the quantity of the timber or to any representations made by defendants with respect thereto, was accepted by defendant, Champion Fibre Company. The said company, thereafter, by deed dated 24 December, 1921, conveyed to plaintiff the land and timber which were the subject-matter of their negotiations begun early in December. The said deed contains no warranty as to the quantity of timber on the land described therein; there was, however, a supplemental agreement, embodied in the deed of trust executed by plaintiff to secure the purchase price of the land and timber, fixing the minimum price of the land and timber at $30,000 and providing that if upon a survey to be made thereafter, the acreage of the land should be found to exceed 1,050 acres, plaintiff should pay for such excess at the rate of $25 per acre. The deed conveyed to plaintiff, not only the land described therein in fee, but also the timber on another tract, containing 150 acres.

There is evidence tending to show that there were only 2,530,190 feet of timber on the land at the time same was conveyed by the Champion Fibre Company to plaintiff, and that defendants knew at said time that the quantity of said timber was much less than 5,166,000 feet, as shown by the statement exhibited to plaintiff by defendant, W. J. Damtoft, at the beginning of the negotiations for the sale of the land to plaintiff.

At the close of plaintiff's evidence, tending to show the facts to be as above stated, defendants moved for judgment as of nonsuit. This motion was allowed, and plaintiff excepted. He also excepted to the judgment dismissing the action, in accordance with defendants' motion. The only assignments of error upon his appeal to this Court are based upon these exceptions.

These assignments of error cannot be sustained. The contract for the purchase of the land and timber by plaintiff, and the conveyance of the same by defendant, Champion Fibre Company, resulted from the offer of plaintiff and the acceptance by said defendant. It appears affirmatively by plaintiff's testimony that he was not induced to make his offer by any representations theretofore made by defendant, W. J. Damtoft, with respect to the quantity of timber which he proposed to sell to plaintiff. Plaintiff did not rely upon the representations which he testifies were made by Damtoft, but upon his own knowledge, and upon information which he secured by independent investigations. He declined the offer made by defendants at the time the representations were

made. The subsequent contract, pursuant to which the conveyance was made, was not induced by such representations, and differed in material respects from the contract which defendants offered to make.

It is well settled that one cannot secure redress for fraud where he acted in reliance upon his own knowledge or judgment based upon independent investigation. This rule is said to be especially applicable where the representee's investigation was undertaken at the suggestion of the representor. 26 C. J., p. 1162, sec. 75. Plaintiff did not accept defendants' offer, made at Asheville, to sell him the land and timber, situate in Cherokee County, at $30 per acre. He was unwilling to buy the land and timber upon Mr. Damtoft's statement as to his estimate of the quantity of the timber, or as to the estimate made by Mr. Rankin. He relied upon these statements only as inducements to go to see the land and timber, himself, and to make independent investigations. He testifies that after these statements were made to him by Mr. Damtoft, he decided to go to see the land and timber. This he did, with the result that he declined the offer for the reasons stated in his letter. In making his offer to purchase the land and timber at $25 per acre, he informed defendant, Champion Fibre Company, that he had been over the proposition carefully and had consulted with experienced lumber men, who had been on the land, and investigated the timber. His offer is based upon his own independent investigations, and upon information derived from sources other than Mr. Damtoft; he did not rely upon statements made to him by Mr. Damtoft, at the time the offer was made to him, which he subsequently declined.

There was no error in allowing the motion for judgment as of nonsuit, or in dismissing the action pursuant to said motion.

Affirmed.