STATE v. R. W. MAYER.

(Filed 2 January, 1929.)

**False Pretense—Criminal Responsibility—Elements of Crime.**

The seller of merchandise may not be convicted of procuring the sale by false pretense when the buyer acted independently in having the articles examined and agreed upon a lower price than the one first offered by the seller and knowingly concluded the contract upon that basis, one of the essential elements of the crime being lacking to create the offense, that the false representations must actually deceive and defraud the buyer.

CRIMINAL ACTION, tried before *Moore, J.,* at February Term, 1928, of MADISON.

The defendant was charged with the crime of false pretense, arising out of the sale of certain logging equipment, rails, etc., to the Southern Iron & Equipment Company.

Two elements of false pretense charged in the bill of indictment were:

1. False representation made by the defendant to the purchaser to the effect that he had paid $32,000 for the equipment.

2. False representation to the effect that the quantity of rails included in the sale amounted to 23 track miles of rail.

The evidence tended to show that in the early part of October, 1925, the defendant approached the Southern Iron & Equipment Company of Atlanta, Georgia, for the purpose of selling to said company certain logging equipment consisting of machinery and rails of a logging road. The defendant represented that he was the owner of all of said property, and that he had paid therefor the sum of $32,000. The defendant further represented that the rail which he was offering to sell amounted to 23 track miles. The proof offered at the trial disclosed that the defendant instead of paying $32,000 for said property, had paid therefor only $21,500. It was also disclosed that the rail, instead of amounting to 23 track miles, measured out only 15.5 track miles.

On 12 October, 1925, the plaintiff wrote the Southern Iron & Equipment Company at Atlanta, stating: "Your Mr. Corbett and I estimate there to be three miles of 70-pound rail and 20 miles of 56-pound rail, railroad weight to be accepted, connecter, switches, etc., to be weighed in."

On 19 October, 1925, the defendant wrote the Southern Iron & Equipment Company a letter containing, among other statements not pertinent, the following: "The rails and accessories estimated as approximately two thousand tons. You accepting same, where is and as is, at price $15.00 per gross ton of 2,240 pounds. If the estimated tonnage of two thousand tons, which is the basis of this agreement, should be

more, according to the railroad weights, as shipment is made, then you are to pay me an additional amount, at the rate of $15.00 per ton of 2,240 pounds, and if the tonnage should be less than two thousand tons, then I am to pay the difference to you at the same rate."

On 9 November, 1925, the defendant executed and delivered to the Southern Iron & Equipment Company a bill of sale for "all rails, switches, frogs, spikes and accessories," etc. This bill of sale did not mention tonnage or track miles. On the same day, to wit, 9 November, the defendant made a supplemental agreement with the purchaser, conveying to the purchaser certain flat cars and miscellaneous scrap, "to apply to any shortage in weight of the personal property this day also conveyed by said party of the first part to the party of the second part of the approximate tonnage of 1,750 tons of rail and track accessories," etc.

The evidence further disclosed that the Southern Iron & Equipment Company, sent its representative and inspector to examine the property included in the sale. The rails were piled in 14 separate piles just as they had been unloaded from the cars by the Laurel River Logging Company. The inspector of the purchaser made three trips to examine the rails and to count them. He testified: "I had all the opportunity I wanted to count these rails at that time. I was there with Buck Landers. Buck Landers told me there were only 15 miles of rail. I employed him to help me count the rails. He did not tell me he was familiar with that railroad. He told me that it was his opinion that there were 15 miles of rails. We spent probably an hour and a half or two hours at that time marking the rails. Mr. Landers and I chalk marked as many rails as we could. I counted them. I do not know how many I counted at that time. . . . As a result of my visits and my making investigations, I changed that contract from approximately 2,000 to approximately 1,750 tons, and made a new contract on 19 November, three weeks afterwards. I had three weeks from the first time I came to make any investigation I wanted to, and I made three trips up here. . . . In that written contract there was not a word said about mileage, but verbally there was. While we had two written contracts, I did not put anything in either about mileage, because it was based on a tonnage basis."

With respect to the alleged representation, that the defendant had paid $32,000 for said property, the agent and representative of the Southern Iron & Equipment Company testified as follows: "It was the agreement that we would not complete the trade until we saw that contract. (Contract between Laurel River Logging Company and Mayer.) I saw on the face of that contract that Mr. Mayer was paying only $21,500 at that time. I remarked to him that he was making

a very nice profit, a couple of hours later, after the deal was closed. In the face of the fact that I knew he had not paid but $21,500, before the contract was closed, I swore before the grand jury that we were deceived in that he had told me that he had paid $32,000, because he had told me that he had paid $32,000, because I had not seen the papers until they were out of my hands. They were in the hands of our lawyer."

The defendant was convicted and sentenced to serve a term of not less than five nor more than eight years in the penitentiary, from which judgment he appealed, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*R. R. Williams and Varser, Lawrence, Proctor & McIntyre for defendant.*

BROGDEN, J. "The constituent elements of the offense of false pretense are: (1) That the representation was made as alleged; (2) that property or something of value was obtained by reason of the representation; (3) that the representation was false; (4) that it was made with intent to defraud; (5) that it actually did deceive and defraud the person to whom it was made." *S. v. Johnson,* 195 N. C., 506; *S. v. Roberts,* 189 N. C., 93, 126 S. E., 161; *S. v. Carlson,* 171 N. C., 818, 89 S. E., 30.

The record in this case contains many assignments of error. The defendant duly made a motion of nonsuit, contending that the evidence, viewed in its most favorable light, clearly disclosed that the Southern Iron & Equipment Company, in purchasing said rails from the defendant, was not deceived or misled by the representations made by him for the plain reason that all of the evidence tended to show that the purchaser of said property, through competent and expert agents, made a thorough and independent investigation of the quantity and quality of the property included in the sale. The principle of law involved in this aspect of the case is clearly stated as follows in *Patton v. Fibre Co.,* 194 N. C., 765, 140 S. E., 734: "It is well settled that one cannot secure redress for fraud where he acted in reliance upon his own knowledge or judgment based upon independent investigation. This rule is said to be especially applicable where the representee's investigation was undertaken at the suggestion of the representor."

The evidence further discloses that the contracting parties abandoned the mileage basis and adopted a tonnage basis upon which to consummate the transaction. Indeed, after the tonnage basis was adopted, the agent of the purchaser, as a result of his investigation, reduced the estimate of 2,000 tons made by the defendant to 1,750 tons.

The evidence is plain and unmistakable. The purchaser knew before the contract was closed that the defendant was not paying $32,000 for said property, and the purchaser further knew, or had sound reason to believe, that the estimate made by the defendant was too high, and for this reason insisted that the amount of rail be reduced.

It is useless to set out an array of authorities or to pyramid quotations therefrom. The purchaser made the contract with his eyes wide open, and after a complete and thorough independent investigation, and cannot now invoke the aid of the criminal law to repair an error of judgment in making a bad bargain.

The motion for nonsuit should have been allowed, and it is so ordered.

