728 P.2d 671

**DILLON–MALIK, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**Mary Lou WACTOR, an unmarried woman, Defendant/Appellee.**

**No. 2 CA–CIV 5638.**

Court of Appeals of Arizona, Division 2, Department A.

June 25, 1986.

Review Denied Oct. 21, 1986.

Terry W. Aron, P.C. by Karen E. Allen, Tucson, for plaintiff/appellant.

Russo, Cox, Dickerson, Butler and Russo, P.C. by J. Patrick Butler and Ethan Steele, Tucson, for defendant/appellee.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a motion for summary judgment in favor of Wactor on her counterclaim and in favor of Wactor on Dillon-Malik's complaint.

The dispute between the parties arose out of a lease agreement. The facts con-

sidered in the light most favorable to Dillon-Malik are as follows. The premises owned by Wactor are located at 2902 North Country Club Road in Tucson and are zoned "B–1 nonconforming." Dillon-Malik intended to operate a decorative rock landscaping business on the premises and that intention was conveyed by Mr. Dillon to Wactor prior to the execution of the lease. During negotiations, questions arose concerning the zoning of the property and precisely what activities would be permissible under the zoning code. Dillon was concerned because he anticipated placing heavy equipment on the property and wanted to expand the fenced storage area on the property. Wactor told Dillon how she believed the property was zoned and also told him that the city had previously leased a portion of the property for the purpose of storing heavy equipment. She further told Dillon that the property had a non-conforming use status. Actually only a portion of the property had such a status. Actually only a portion of the property had such a status. Wactor represented that the existing boundaries for the storage of materials outside the structure could be expanded as required by Dillon's business.

Wactor also made it clear to Dillon and he understood that he would have to check out the zoning of the property for himself and that whatever business he planned would require zoning approval. In fact, Dillon, who was familiar with zoning requirements and procedures, went to the city's zoning department to find out what activity was permitted on the property. He looked at the zoning map and saw the property was zoned B–1 nonconforming. He told the people in the zoning department what sort of business he proposed. The business license he obtained read "retail sand and gravel." Meanwhile, Dillon-Malik had moved materials onto the property and had begun its operation as a decorative rock and landscaping business before the lease was even signed.

After completing his inquiry and obtaining a business license from the city and after nearly a month of operating his business, Dillon signed the lease. Dillon was aware, at the time of such signing, of Paragraph 5 of the lease which provides:

"5. *USE OF PREMISES:* The Lessees agree and covenant with the Lessor to use and occupy the leased premises for a decorative rock landscaping business. In the event Lessees desire to change the use and occupancy of the leased premises, the approval of the Lessor shall be obtained, which approval shall not be unreasonably withheld. Lessees shall conform and comply with all applicable Municipal, State and Federal ordinances, laws, rules and regulations in using the leased premises, and Lessees will not use or permit to be used the leased premises in any manner so as to create any nuisance."

After executing the lease, Dillon-Malik continued commercial business on the property. The volume of business grew. Eventually Dillon-Malik was storing as many as nine large trucks on the property and had expanded the fenced storage area. After complaints from neighbors, the zoning department inspected the property and informed Dillon-Malik that its use of the heavy equipment and expansion of the fenced storage area violated the property's B–1 nonconforming zoning status. Instead of modifying its operation to conform to the zoning code, Dillon-Malik abandoned the property and stopped paying rent.

Dillon-Malik then brought this action against Wactor for damages due to its inability to operate on the property within the limits of the zoning code. Wactor counterclaimed for rents lost between the time Dillon-Malik abandoned the property and the time that Wactor was able to obtain another tenant.

Dillon-Malik contends that the trial court erred in granting Wactor summary judgment for the following reasons: (1) a genuine issue of material fact existed as to whether the lease agreement between the parties was invalid and unenforceable based on the doctrine of commercial frustration; (2) a genuine issue of material fact existed as to the mutual mistake of the

parties which precluded summary judgment; (3) a genuine issue of material fact existed as to whether Wactor breached an express warranty of the suitability of the premises for a decorative rock landscaping business; (4) a genuine issue of material fact existed as to whether Wactor fraudulently misrepresented the permissible uses of the property; and (5) a genuine issue of material fact existed as to whether Wactor breached an implied covenant of quiet enjoyment. If any of the foregoing issues are found by this court to be in Dillon-Malik's favor, then Dillon-Malik contends that the trial court erred in granting Wactor summary judgment on her counterclaim for breach of contract. We affirm.

■ Wactor argues that the first two issues raised by Dillon-Malik should not be considered by us because they are raised for the first time on appeal. We agree. An argument or a theory not urged at the trial court level cannot be asserted for the first time on appeal to reverse the granting of a summary judgment. *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984); *Rhoads v. Harvey Publications, Inc.*, 131 Ariz. 267, 640 P.2d 198 (App.1981); *Fendler v. Phoenix Newspapers, Inc.*, 130 Ariz. 475, 636 P.2d 1257 (App.1981).

■ As for the issue raised regarding the breach of an express warranty, the written agreement entered into between the parties contains no express warranty that the property was suitable for a decorative rock landscaping business. Assuming arguendo that an oral express warranty could supply the basis for liability, not even the evidence of the negotiations between the parties establishes such an express warranty as to the suitability of the premises for a decorative rock landscaping business.

■ With regard to the claim of fraudulent misrepresentation, requisite element of fraud is reliance. *Matter of Adoption of Hadtrath*, 121 Ariz. 606, 592 P.2d 1262 (1979). Dillon-Malik cannot secure redress for fraud where it acted in reliance on Dillon's own judgment based upon independent investigation. *Greathouse v. Jones*, 167 Colo. 406, 447 P.2d 985 (1968). This rule is especially applicable since Dillon's investigation was undertaken at the suggestion of Wactor. *State v. Mayer*, 196 N.C. 454, 146 S.E. 64 (1929); *Patton v. Champion Fibre Co.*, 194 N.C. 765, 140 S.E. 734 (1927). Dillon made his own investigation at the city's zoning department at the suggestion of Wactor and he did not rely on her representations.

■ Dillon-Malik argues that an issue exists as to the alleged breach of the landlord's implied covenant of quiet enjoyment. A landlord's obligation under a covenant of quiet enjoyment does not extend to acts of other tenants or third parties unless such acts are performed on behalf of the landlord or by one claiming paramount title. *Thompson v. Harris*, 9 Ariz.App. 341, 452 P.2d 122 (1969). The fact that a tenant's enjoyment of the demised premises is interfered with in the exercise of police power, not due to any fault on the part of the lessor, is not a breach of the lessor's covenant of quiet enjoyment. *Al's 334 9th Ave. Corporation v. Herbener*, 83 N.Y.S.2d 676 (1948). No breach arose from the city's insistence that Dillon-Malik comply with its zoning code.

Wactor has requested and is entitled to attorney's fees for defending this appeal and, upon compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S., the court will determine and award such fees.

Affirmed.

HATHAWAY, C.J., and FERNANDEZ, J., concur.