**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHRISTOPHER'S ARIZONA
TRANSPORTATION SERVICE,
INCORPORATED, an Arizona
Corporation; CHRISTOPHER E.
MULLIN, JR.,
Plaintiffs-Appellants,

v.

JOSEPH DUNCAN; BONNIE DUNCAN;
DOVE AIR, INCORPORATED, a/k/a
Dove, Incorporated, a North                          No. 99-1721
Carolina Corporation; THE DUNCAN
FAMILY LIMITED PARTNERSHIP, a
South Carolina Limited Partnership,
Defendants-Appellees.

and

SILVER STATE AVIATION,
INCORPORATED, a Nevada
Corporation,
Defendant.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Max O. Cogburn, Magistrate Judge.
(CA-97-327-1-C)

Argued: March 1, 2000

Decided: July 6, 2000

Before MICHAEL, Circuit Judge, G. Ross ANDERSON, Jr.,
United States District Judge for the District of
South Carolina, sitting by designation, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Hywel Leonard, CARLTON, FIELDS, WARD, EMMANUEL, SMITH & CUTLER, P.A., Tampa, Florida, for Appellants. Sharon Tracey Barrett, PATLA, STRAUS, ROBINSON & MOORE, P.A., Asheville, North Carolina, for Appellees. **ON BRIEF:** Stephen Williamson, VAN WINKLE, BUCK, WALL, STARNES & DAVIES, P.A., Asheville, North Carolina, for Appellants. Mark C. Martin, PATLA, STRAUS, ROBINSON & MOORE, P.A., Asheville, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Christopher's Arizona Transportation, Inc. and Christopher Mullin, Jr. (the "appellants") appeal from the district court's grant of judgment as a matter of law for Joseph Duncan, Bonnie Duncan, Dove Air, Inc., and the Duncan Family Limited Partnership (the "appellees") on the appellants' fraud claim. The district court concluded that (1) the appellants failed to establish the reliance element of their fraud claim, and alternatively (2) had reliance been established, the jury award for fraud constituted a double recovery and thus was stricken under the doctrine of election of remedies. Based on these findings, the district court entered a revised judgment for the compensatory claims awarded to the appellants under their fraudulent conveyances claim only. We reverse and remand.

I.

In the mid-1980's, the appellants and the appellees were parties to a venture to purchase, then resell a large jet aircraft. The appellants

2

provided the funds, and Appellee Joseph Duncan, supposedly, was to provide the expertise in marketing the aircraft. Duncan also was to distribute the proceeds from the sale of the aircraft. Instead, Duncan misappropriated the appellants' share of the proceeds. The appellants subsequently filed suit in the United States District Court in Arizona in 1988 to recover the lost proceeds.

Before the case went to trial, however, Joseph Duncan (joined by his wife Bonnie) declared bankruptcy in Tampa in October 1991. At that time, the Duncans were Florida residents. The bankruptcy court lifted the automatic stay to permit the Arizona court to proceed to judgment and to liquidate the appellants' claims against the Duncans. In January 1992, acting on the parties' stipulation, the Arizona court entered a $1,500,000 judgment against Joseph Duncan.

Shortly thereafter, the appellants filed an adversary proceeding in the Florida bankruptcy court seeking a determination that some or all of Duncan's debt was non-dischargeable. In April 1993, the bankruptcy court declared that $498,452.45 of Duncan's $1,500,000 debt to the appellants was non-dischargeable because it represented amounts Duncan converted illegally. Final judgment to that effect was entered in January 1994.

The appellants then began a long effort to collect the $498,452.45 from Duncan. The Duncans, however, proved uncooperative and unscrupulous. To avoid paying what he owed to the appellants, Joseph Duncan engineered a series of sham financial transactions with his wife and his corporation to conceal his true financial worth and to create the appearance of being judgment-proof. After three years of this calculated deceit, in May 1997, a federal district court in Asheville, North Carolina, ordered the Duncans to produce their business and financial records, on threat of contempt. After the Duncans complied, and the appellants had an opportunity to review the Duncans' financial records, the Duncans' subterfuge came to light.

On November 6, 1997, the appellants filed the lawsuit that gave rise to the appeal in the instant case in the United States District Court for the Western District of North Carolina. The appellants stated two claims against the appellees, both arising under the law of North Carolina. The first was a claim for fraudulent conveyance, alleging that

3

Appellees Bonnie Duncan, Dove Air, Inc., and The Duncan Limited Family Partnership were the recipients of a series of fraudulent transfers from Joseph Duncan. The second was a claim for common law fraud, alleging that all of the appellees engaged in an orchestrated campaign of deception, in furtherance of a scheme to frustrate the appellants from locating assets to satisfy a judgment Joseph Duncan owed them. The appellees requested a jury trial, and both parties consented to have a Magistrate Judge preside.

On March 10, 1999, the jury found for the appellants on the fraudulent conveyance claim, awarding $660,212.89 in compensatory damages. With respect to the common law fraud claim, the jury awarded the appellants $165,053.22 in compensatory damages against each of the four appellees, as well as $200,000 in punitive damages against each of the following three of the appellees: Joseph Duncan, Bonnie Duncan, and Dove Air, Inc. Following the verdict, the appellees filed a motion for judgment as a matter of law. The court granted the appellees' motion in part, striking the compensatory damages award on the common law fraud claim. According to the court, the appellants failed as a matter of law to establish a crucial element of a North Carolina fraud claim: namely, "reasonable reliance" by the appellants upon the appellees' deceptive conduct. Had the appellants sufficiently proved reasonable reliance to the court, the appellants still would not have received the jury award for fraud as the court held that the corresponding $165,053.22 compensatory damages award against each appellee constituted a "double recovery," and therefore should be stricken on election of remedy principles.[1] Consequently, the court entered a revised judgment for $660,212.89 in compensatory damages. The court, however, left undisturbed the punitive damages award, despite the fact that such damages were engendered by the jury's erroneous finding on the common law fraud claim.

_____

[1] The appellees had declared bankruptcy, and only $498,452.45 of their debt to the appellants was eligible for recovery as non-dischargeable debt (the $660,212.89 damage cap represented the $498,452.45 plus interest). Because the appellants had already recovered the full amount to which they were entitled in a separate compensatory damages award for fraudulent conveyance, the court treated the additional $165,053.22 awarded against each appellee for the fraud claim as an improper "double recovery."

4

On March 29, 1999, the appellees filed a separate motion to amend or correct the court's judgment, arguing that the court also should have stricken the punitive damages award, because such damages were parasitic on the defective fraud claim. On this theory, the infirmity in the fraud claim was fatal to both the fraud claim and the resulting punitive damage award. The court agreed. On April 29, 1999, the court struck the punitive damages award and entered a revised judgment consisting of only the $660,212.89 compensatory damages award for the fraudulent conveyance claim.

## II.

Absent some statute or prevailing authority directing otherwise, fraud is a creature of the common law, i.e., "Common law fraud." The common law of fraud requires in North Carolina, as in many states, the plaintiff to prove to the satisfaction of the trier of fact five elements, as set out infra. When there is not evidence proving one or more of these factors, it is the obligation of the court to hold that these have been a failure to prove common law fraud. When there is evidence of each of these elements, however, the decision as to the probity and weight of that evidence is clearly a matter within the province of the fact finder and the court should exercise great caution in interfering with that decision. While the amount or the nature of the evidence supporting each of these elements may be, in the eyes of the judge, unsatisfactory or too weak, the weight and effect of that evidence is committed to the fact-finder, and especially is this so where there is conflicting evidence or evidence from which conflicting inferences and conclusions may be drawn. It is against this analysis that the question here presented must be decided.

## III.

The appellants appeal from the lower court's decision to grant the appellees' motion for judgment as a matter of law, which decision invalidated the jury's finding that the appellees were guilty of common law fraud. A judgment as a matter of law rests on pure issues of law and is therefore subject to de novo review on appeal. See Tools USA Equip. v. Champ Frame Straightening Equip., 87 F.3d 654, 657 (4th Cir. 1996). The test for determining whether judgment as a matter of law (formerly JNOV) is appropriate is "whether, viewing the

5

evidence in the light most favorable to the nonmoving party (here, the appellants), there is substantial evidence in the record to support the jury's findings." Wilhelm v. Blue Bell, 773 F.2d 1429, 1433 (4th Cir. 1985). If the evidence indicates that the jury's conclusion is plausible, the court must deny the motion for judgment as a matter of law. See Siegfried Constr., Inc. v. Gulf Ins. Co., No. 98-2808, 2000 WL 123944, at * 2 (4th Cir. Feb. 2, 2000).

For purposes of the instant case, the pertinent question is whether the jury had sufficient evidence to conclude that the appellants successfully proved common law fraud. Because this case is in federal court on diversity grounds, North Carolina state law of fraud provides the controlling substantive legal principles. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938). To establish fraud under North Carolina law, a plaintiff must prove five elements: (1) a false representation or concealment of a material fact; (2) which is reasonably calculated to deceive (i.e., made with knowledge of its falsity); (3) which is made with an intent to deceive (scienter); (4) which does in fact deceive the plaintiff (reliance); and (5) which results in injury to the plaintiff (damages). See Rowan County Bd. of Educ. v. United States Gypsum Co., 418 S.E.2d 648, 658 (N.C. 1992); Werner v. Alexander, 502 S.E.2d 897, 901 (N.C. App. 1998). It is black letter law, recognized by North Carolina courts that "fraud embraces`all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'" Rowan County Bd. of Educ. v. United States Gypsum Co., 407 S.E.2d 860, 865 (N.C. App. 1991) (quoting BLACK'S LAW DICTIONARY 594 (5th ed. 1979)).

The jury in the instant case concluded that the appellants carried their burden of proof on all five elements. The court conceded that the appellees engaged in blatant misrepresentations deliberately calculated to deceive the appellants by concealing assets and obstructing the appellants' efforts to collect a binding legal judgment. The single disputed element, however, is whether the appellants reasonably relied to their detriment on the false representations and concealments made by the appellees. In ruling that "reliance" had not been established, the court held that Mr. Mullin, the most prominent appellant,

6

was such a vigilant creditor and was so attuned to the appellees' subterfuge that he did not "rely" on the deceptions, in the legal sense of the word.

The appellants responded with two arguments. First, despite their knowledge of the appellees' general proclivity toward dishonesty, the appellants argue that they were not aware of the specifics of the appellees' deception until well into the litigation. Second, the appellants argue that, had they known of the deception sooner, they would have taken different, more effective measures to collect the judgment the appellees owed them. This foregone opportunity, the appellants argue, represents the detrimental reliance induced by the appellees' falsehoods.

An individual is unable to recover damages "for fraud upon a representation which he knows to be false, for he cannot be deceived by that which he knows." Cox v. Johnson, 40 S.E.2d 418, 419 (N.C. 1946). The appellees assert, and the trial judge found, that the appellants, specifically Mr. Mullin, knew of the appellees' dishonesty and thus were not deceived. However, the appellants' suspicions did not amount to the level of knowledge necessary to nullify the reliance element of a fraud claim. In Patton v. Champion Fibre Co., 140 S.E. 734 (N.C. 1927), the North Carolina Supreme Court affirmed a trial court's decision to grant judgment as a nonsuit when the plaintiff failed to show he relied on the defendant's estimates about the quantity of timber on the property. Though the defendant falsely informed the plaintiff about the quantity of timber, the plaintiff declined the defendant's original offer to sell and insisted upon investigating the property himself. See id. at 736. The court held that in investigating the land, the plaintiff's offer to buy the property was based upon his own independent investigations, and not upon the defendant's estimates of timber quantity. See id. Accordingly, the plaintiff failed to establish reliance.

The present case can be distinguished from Patton. Here, we have appellants, suspicious that the appellees were being dishonest with them regarding their financial situation but were, however, unable to ascertain with certainty such dishonesty. Moreover, unlike the plaintiff in Patton, the appellants did not have the opportunity to investigate the appellees' personal records to determine, in fact, whether the

7

appellees were being deceptive. As soon as the district court afforded the appellants such opportunity through a contempt order against the appellees, the appellants discovered that their suspicions were correct and filed this suit. Had the appellants, upon learning of the trickery, continued to remain inactive in recovering their judgment, then this court could hold that the appellants did not rely on the appellees' statements. However, such a finding could not be made until the appellants had the opportunity to investigate the appellees' records and determine that their suspicions of dishonesty were indeed correct.

The determination that the appellants did not possess the level of knowledge necessary to void the reliance element is supported by public policy. If courts were to adopt the appellees' argument that suspicion of falsity destroys reliance on the false statement, unabashedly deceitful debtors like the appellants always could insulate themselves from common-law fraud actions by portraying their victims as diligent, "street smart" operators fully cognizant of the subterfuge being committed against them. In this scenario, culpable debtors could create a "safe harbor" from common law fraud claims by manipulatively extinguishing the element of reliance. Based on this public policy combined with the case law, this court finds that the appellants' suspicions did not rise to the level of knowledge necessary to prevent the appellants from establishing the reliance element.

Next, the appellants assert that they relied on the appellees' statements regarding their financial status, as can be evidenced from the fact that the appellants refrained from taking more assertive actions to recover their judgment against Joseph Duncan. This is a complex case to determine whether there was actual reliance evidenced by inaction, but only because the paradigm case of fraud looks very different from what happened to the appellants. In the paradigm case, Party A sells a house to Party B and tells a deliberate falsehood that the plumbing is in perfect working condition, when in fact it malfunctions on a regular basis. In reliance on this false representation, Party B agrees to buy the house without doing a thorough check of the plumbing system. When the pipes malfunction, Party B is stuck with a $15,000 repair bill. This constitutes actionable fraud because Party B reasonably and detrimentally relied on the misrepresentation about the plumbing. That is to say, upon hearing the falsehood, she refrained from a detriment-avoiding course of action (getting the

8

plumbing checked) that she would have taken had Party A been honest. See generally Johnson v. Owens, 140 S.E.2d 311 (N.C. 1965).

In the present case, during the four year period between 1993 and 1997, the appellees engaged in a host of misrepresentations and concealments (in the form of false deposition testimony) designed to disguise their total assets and manufacture a facade of judgment-proofness. In Joseph Duncan's July 1994 deposition, Duncan deliberately failed to produce records relating to a bank account he had set up with the brokerage house of Raymond James, despite the fact that he had received a federal court subpoena to produce his financial records for 1992-94. At trial, Joseph Duncan explained that the failure to produce the Raymond James statements in 1994 was "an error on [his] part." During the same deposition he lied when he claimed that his wife was the source of funds to buy back some of his assets from the bankruptcy trustee. Bonnie Duncan also lied to the appellants about the source of the funds used to pay the trustee to repurchase the assets in her 1995 deposition. She claimed the funds came from her mother--a deception necessary to hide the true source, Joseph Duncan--as well as the existence of the Raymond James account. At trial she conceded that the funds came from a commission for aircraft sold by her husband. Seeking to explain away her prior sworn statements, Bonnie informed the jury that her earlier inaccurate explanations "weren't intentional." Of course, such disclosures would have destroyed the shield created by the appellees and opened the path for the appellants to seize the stock and assets of Duncan Aircraft Parts as well as other assets the Duncans had retrieved. Without a document trail, the appellants were stymied and were forced to rely, as Joseph Duncan intended, on his misstatements and concealments.

It was not until 1997, when the court forced Duncan to produce a series of records and accountings, that the appellants became aware of the deception the appellees had been practicing to avoid paying the judgment. Once the appellants realized what was happening, they immediately filed the present lawsuit, alleging common law fraud and fraudulent conveyances. Had the appellants known of the deception earlier, they could have adopted a different, perhaps more effective, strategy to collect the judgment (attaching property, garnishing wages, seizing stock, intercepting other payments due to Joseph Duncan, etc.). Because the appellants did not know about all the appel-

9

lees' assets, however, this course of action was foreclosed. As a result, the appellants contend that they relied on the appellees' deception to their detriment, thereby satisfying the "reliance" element of their common law fraud claim.

North Carolina courts have acknowledged that reasonable reliance can be proved by acting or by "refraining from action" because of the fraudulent misrepresentation. See Rowan County Bd. of Educ. v. United States Gypsum Co., 407 S.E.2d 860, 863 (N.C. App. 1991) (citing W. Prosser, HANDBOOK OF THE LAW OF TORTS §§ 105,108 (5th ed. 1984)); RESTATEMENT (SECOND) OF TORTS § 537 (1977)); J.G. Fox v. Southern Appliance, Inc., 141 S.E.2d 522, 526 (N.C. 1965); Ramsey v. Wallace, 6 S.E. 638, 643 (N.C. 1888). [2] As such, the appellants' forbearance in not taking more effective steps to recover judgment against the appellees may be considered reasonable reliance. Moreover, as the question of reasonable reliance is more appropriate for a jury, and the jury in the present case found such reliance, this court should be extremely cautious in determining as a matter of law that reliance did not exist. See Fox, 141 S.E.2d at 526 (recognizing question of reliance on seller's representations is for the jury); Rowan, 418 S.E.2d at 658 ("[I]t is inappropriate to grant motions for directed verdict and judgment notwithstanding the verdict if there is evidence that supports the plaintiff's prima facie case in all its constituent elements."). Accordingly, the jury verdict finding fraud should be reinstated.

Though reliance has been established, it does not end the inquiry of whether the appellants are entitled to fraud damages as the trial judge alternatively ruled that judgment as a matter of law was granted based on election of remedy principles. Under North Carolina law, "if the jury awards damages based upon two or more mutually exclusive theories of recovery, plaintiff[s] should choose between these damage awards." Smith v. Childs, 437 S.E.2d 500, 510 (N.C. App. 1993). The

---

**2** The case of Fields v. Mans , 516 U.S. 59 (1995), illustrates that simple creditor forbearance in the face of misleading statements may constitute "reliance." Though not dispositive of the reliance issue in the present case because Mans dealt with the meaning of "reliance" within the federal bankruptcy code, instead of the North Carolina common law of fraud, the Mans decision is persuasive.

10

purpose of the election of remedies doctrine "is not to prevent recourse to any remedy, but to prevent double redress for a single wrong." Mehovic v. Mehovic, 514 S.E.2d 730, 733 (N.C. App. 1999) (quoting Smith v. Gulf Oil Corp., 79 S.E.2d 880, 885 (N.C. 1954)). As made clear during oral argument, there are two wrongs in the present case. The fraudulent conveyances are one wrong and would have been recognized as a wrong had the appellees never communicated with the appellants. Additionally, the fraudulent statements during various depositions and the concealment of documents were a separate wrong recoverable by an action of fraud. As such, the claims of fraud and fraudulent conveyances are not mutually exclusive in the present case and thus are not subject to the doctrine of election of remedies. Accordingly, the appellants are entitled to the compensatory damages from the fraudulent conveyance claim as well as the compensatory and punitive damages from the fraud claim. Of course, the district court should insure that the total compensatory damages recovery is limited to the agreed-upon cap of $660,212.89.

IV.

For the foregoing reasons, we conclude that the district court erred in awarding the appellees judgment as a matter of law. The judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED